UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ALLEN FELLOWS,

  Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

  Defendant.
_____/

Case No. 1:16-cv-1064

HON. JANET T. NEFF

## OPINION

  Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner). Plaintiff seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

## STANDARD OF REVIEW

  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the

facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff has twice filed applications for benefits. His first, filed on August 24, 2005, resulted in an unfavorable decision by an ALJ on September 26, 2008. Plaintiff appealed the decision to the Appeals Council, but on August 23, 2010, the council denied review. Plaintiff did not further pursue this application.

Plaintiff filed his second applications for DIB and SSI on August 13 and 16, 2010, respectively, alleging disability due to a broken neck and left ankle, "bludging" L2 through L5

2

vertebrae, learning problems, depression, anxiety, and foot and sleeping problems. (PageID.277.) In both applications, Plaintiff alleged a disability onset date of September 23, 2008. Plaintiff's claims were denied on June 30, 2011, after which time Plaintiff again sought review by an ALJ. Plaintiff appeared for an administrative hearing on October 19, 2012. This resulted in an unfavorable decision by an ALJ dated January 7, 2013, and the Appeals Council subsequently denied review. This time, Plaintiff appealed the Commissioner's decision to federal court and in a decision dated July 8, 2015, Magistrate Judge Hugh Brenneman, Jr., reversed and remanded the Commissioner's decision. The magistrate's opinion directed the Commissioner "to determine whether the September 11, 2102 [sic] assessment was the opinion of a treating physician or a physicians' assistant and re-evaluate it accordingly." (PageID.972.)

Pursuant to the magistrate's decision, the Appeals Council remanded the case to ALJ Donna Grit on August 25, 2015. (PageID.975.) ALJ Grit held an administrative hearing on January 14, 2016, at which time both Plaintiff and a vocational expert (VE) testified. (PageID.844–890.) In an unfavorable decision dated February 19, 2016, ALJ Grit determined Plaintiff was not disabled. (PageID.814–843.) On June 29, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.796–801.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

**ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at

---

[1]  1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

 2.   An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R.

any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Grit determined that Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (PageID.819.) At step two, the ALJ determined that Plaintiff had the severe impairments of cervical spine fracture with a history of a cervical fusion; history of a left ankle fracture; history of arthroscopic surgery, adhesive capsulitis, and degeneration of the acromioclavicular joint; history of compression fractures in the lumbar spine; history of right calcaneal fracture; thoracic degenerative changes; chronic obstructive pulmonary disease (COPD);

---

§§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

cannabis dependence; borderline intellectual functioning; and depression. (PageID.820.) At the third step, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.820–823.) At the fourth step, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except no climbing ladders, ropes, and scaffolds; occasional balancing, stooping, crouching, crawling, kneeling, overhead reaching with both upper extremities or use of bilateral foot controls; no tasks that require rotation of the neck such that the chin is behind the shoulder (as might be used in backing up a motor vehicle); no work at unprotected heights or around dangerous moving machinery; and no more than occasional exposure to fumes, dusts, gases, odors, poor ventilation, and extremes of cold or heat. The claimant can understand, remember, and perform simple tasks and make simple decisions with occasional changes in workplace expectations or environment.

(PageID.823.) Continuing with the fourth step, the ALJ found that Plaintiff was unable to perform any of his past relevant work. (PageID.832.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform other work as an assembler (42,000 national positions), as a parts polisher (48,000 national positions), and as a security monitor (18,000 national positions). (PageID.883–889.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.833.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from September 23, 2008, the alleged disability onset date, through February 19, 2016, the date of decision. (PageID.833–834.)

**DISCUSSION**

**1.     Remand is Not Required For Harmless Typographical Errors.**

In his first claim of error, Plaintiff contends the ALJ crafted a faulty RFC and as a result depended upon unreliable vocational expert testimony when she failed to incorporate limitations offered by Dr. King and PA-C Wilkins despite finding their opinions were consistent with the record as a whole. (PageID.1249–1250.) She notes that the ALJ gave PA-C Wilkins' statement "little weight" despite finding that "the opinion is not inconsistent with other substantial evidence of record." (PageID.829.) Similarly the ALJ stated Dr. King's opinion was given little weight but also stated it was "consistent with the evidence as a whole." (PageID.831.)

These phrases clearly were typographical errors. It is patent the ALJ in fact determined that the opinions were *not* consistent with the record evidence. This is clear because the ALJ discussed, at length, the inconsistences between both opinions and the objective record evidence. It is not a post-hoc rationalization to reach this result. The error in question is simply the type of mistake that occurs from time to time when word processing software is utilized to prepare opinions. Plaintiff has identified absolutely no authority on point to support his call for remand, and the Court finds remand is not appropriate. *See Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (recognizing that the harmless error doctrine is intended to prevent reviewing courts from becoming "impregnable citadels of technicality"); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535–36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ was unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect

opinion unless there is reason to believe that the remand might lead to a different result"). Accordingly, this argument is rejected.

### 2. The ALJ's Evaluation of the Opinion Evidence is Supported by Substantial Evidence.

In support of his application for benefits, Plaintiff submitted several opinions from his care providers all of which found Plaintiff to be impaired to an extent far greater than as ultimately recognized by the ALJ. In his second claim of error, Plaintiff contends the ALJ erred in failing to properly consider the opinions from Dr. Recknagel, Dr. Powell & PA-C Wilkins, Dr. King, and Dr. Mulder. For reasons explained below, the Court discerns no error.

#### A. *The Treating Physician Doctrine Generally*

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating physician if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.

*See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979, at *2 (citing *Shavers,* 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must provide "good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "'are not well-supported by any objective findings' and are 'inconsistent with other credible evidence'" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Gayheart*, 710 F.3d at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) the specialization of the treating source; and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g.*, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

### B. Dr. Recknagel

After Plaintiff complained of severe shoulder pain in his right shoulder, PA-C Wilkins referred Plaintiff to Dr. Recknagel, an orthopedic surgeon. (PageID.742.) After evaluation, Dr. Recknagel recommended surgery, which Plaintiff underwent on October 25, 2011. (PageID.682–683.) Prior to the surgery, the doctor indicated that Plaintiff could perform light duty work with no use of his right upper extremity. (PageID.688.) Following surgery, however, the surgeon indicated that Plaintiff was off work until the next appointment. (PageID.686.) The doctor continued to keep Plaintiff off work on November 9, 2011, and December 29, 2011. (PageID.684–685.) The ALJ discussed these records as follows:

> Shortly after the claimant's October 2011 right shoulder surgery, his treating orthopedist, Dr. Recknagel, indicated the claimant should be off work and is totally disabled (Ex. B34F/26-29). Little weight is given to this opinion as it appears to apply to the recovery period following the surgery. Dr. Recknagel's findings following the December 2011 opinion fail to document significant findings that would be consistent with total disability. Furthermore, later imaging studies document only mild osteoarthritis in the acromioclavicular joint and mild tendinopathy (Ex. B49F/3).

(PageID.829.) Plaintiff claims the ALJ failed to provide good reasons to assign less than controlling weight to the opinion. Plaintiff further claims the ALJ, after assigning it less than controlling weight, failed to consider Dr. Recknagel's opinion under the factors provided in 20 C.F.R. §§ 404.1527, 416.927. Plaintiff's claim is without merit.

The doctor's statements that Plaintiff could not work do not qualify as a medical opinions. A medical opinion is defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite

9

impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2) (2013). While medical opinions offered by treating sources are generally accorded deference, statements that a claimant suffers from unspecified limitations or is disabled or unable to work are entitled to no deference because the determination of disability is a matter left to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) (2013.).

"Nevertheless, even where controlling weight will not be accorded because a treating source's opinion relates to an issue reserved to the Commissioner, an ALJ still must explain the consideration given to the treating source's opinion." *Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 432 (6th Cir. 2016) (internal quotations and citations omitted). The ALJ did so here. As the ALJ observed, these opinions appear to be temporary restrictions following Plaintiff's surgery, not restrictions lasting a year or more. As the December 2011 treatment note indicated, for example, the restrictions only applied until the following month. (PageID.684.)

After December 2011, the record shows Plaintiff's right shoulder improved. On March 5, 2012, Plaintiff's impingement signs were significantly improved. He also had good range of motion. Plaintiff complained of continued discomfort and received an injection to treat his pain. (PageID.661.) The following month Plaintiff complained of continued significant symptoms and acute pain. But there was still only minimal weakness with testing and Dr. Recknagel recommended that Plaintiff should work on his exercises. (PageID.660.) Plaintiff also underwent an MRI on his right shoulder on August 5, 2015. The result indicated "mild tendinopathy of the supraspinatus, infraspinatus and subsapularis tendons without discrete tear" and "stable mild acromioclavicular osteoarthritis without significant interior mass effect." (PageID.1216.) Thus the ALJ's observation

10

that the extreme restrictions offered by the doctor were not accompanied by significant findings is supported by substantial evidence.

Finally, the Court disagrees that the ALJ failed to properly consider the opinion under the factors found in the regulations. The record clearly shows the ALJ considered Dr. Recknagel's treating relationship, specialty as an orthopedist, and the consistency and supportability of the opinion. (PageID.829.) Regardless of the other factors which the regulation required the ALJ to consider—such as the length, nature and extent of the treatment relationship, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)—the evidence and opinions mentioned thus far provide substantial evidence for the ALJ's decision to accord Dr. Recknagel's opinion little weight.

### C. PA-C Wilkins

As noted above, this case was previously remanded to determine whether an opinion signed by both PA-C Wilkins and Dr. Powell was one from a treating source or not. The ALJ resolved the issue by asking Plaintiff whether he had ever seen Dr. Powell. Plaintiff admitted he had not. (PageID.864.) Accordingly, ALJ Grit determined that the opinion was not one of a physician. (PageID.829–830.) This is consistent with decisions from this district that have found the mere addition of a physician's signature at the bottom of an opinion does not transform the opinion into one of a treating source. *See Fuentes-Martin v. Comm'r of Soc. Sec.*, No. 1:14-CV-385, 2015 WL 5432751, at *4 (W.D. Mich. Sept. 15, 2015).

Under the regulations applicable at the time of the ALJ's decision, physician's assistants are not "acceptable medical sources." *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (2013). There is no "treating physician's assistant rule" and the opinions of a physician's assistant are not entitled to any particular weight. *See Geiner v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008). SSR

11

06–3p clarified how the Social Security Administration "consider[ed] opinions from sources who are not 'acceptable medical sources.'" SSR 06–3p, 2006 WL 2329939, at *1 (S.S.A. Aug. 9, 2006).[2] SSR 06–3p begins by emphasizing the critical distinctions between opinions offered by "acceptable medical sources" and opinions supplied by "other sources." Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *Id.* at *1. The opinions of a physician's assistant fall within the category of information provided by "other sources." *Id.* at *2; *see* 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013). The social security regulations require that information from other sources only be "considered." 2006 WL 2329939, at *1, 4 (citing 20 C.F.R. §§ 404. 1512, 1527, 416.912, 927 (2013)). That said, the ruling recognizes that:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06–03p, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006). Accordingly, the ruling further provides that "the adjudicator generally should explain the weight given to opinions from these

---

[2] The administration rescinded this ruling on March 27, 2017. *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 FR 15263-01 (Mar. 27, 2017). The administration noted the ruling was inconsistent with new rules that "state that all medical sources, not just acceptable medical sources, can make evidence that we categorize and consider as medical opinions." *Id.* Those new rules, however, apply only to claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01 (Jan. 18, 2017). Plaintiff's claim was filed well before that date, thus SSR 06-03 properly applies to Plaintiff's claim.

'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6. It further states that the factors for considering acceptable source opinions "can" be applied to these opinions. *Id.* at *4.

The Court concludes SSR 06-03p's standard was easily met here. The ALJ thoroughly discussed the opinion and provided several reasons for assigning it only little weight. (PageID.829–830.) In addition to noting Mr. Wilkins status as a Physician's Assistant, the ALJ noted that the opinion offered by Mr. Wilkins was inconsistent with the assistant's own treatment notes and that the assistant had provided no rationale for some of the restrictions. Plaintiff does not meaningfully challenge these considerations. In any event, these considerations are supported by substantial evidence. As the ALJ found, the assistant noted Plaintiff had no tenderness on his back, and no deformities, edema or erythema of the extremities. (PageID.1154.) Mr. Wilkins also found Plaintiff had normal motor strength in the extremities. (PageID.1156, 1159, 1161.) Thus the ALJ gave Mr. Wilkins' opinion the "specific consideration" that the Sixth Circuit requires. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). This argument is therefore rejected.

D. Dr. King & Dr. Mulder

On October 10, 2012, Dr. Richard King, EdD, a consultative examiner, completed a three page evaluation concerning Plaintiff's mental limitations. The doctor generally found Plaintiff was impaired to an extent greater than the ALJ ultimately recognized, by concluding that Plaintiff had several moderate and marked limitations in the areas of making occupational, performance, and personal/social adjustments. Dr. King further indicated Plaintiff had several marked and extreme functional limitations. (PageID.745–747.) In a narrative report, the doctor assigned Plaintiff a "poor" prognosis. (PageID.754.) Plaintiff also underwent a psychiatric

13

evaluation with Dr. Mulder on May 23, 2011. As with Dr. King, Dr. Mulder also found Plaintiff had restrictions in excess of those accounted for by the ALJ. (PageID.568–574.) Plaintiff claims the ALJ failed to properly evaluate these opinions. The Court disagrees.

Because Dr. King and Dr. Mulder were not treating physicians, the ALJ was not "under any special obligation to defer to [their] opinion[s] or to explain why he elected not to defer to [them]." *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011); *see Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539–40 (6th Cir. 2014). This is so because the opinions of a consultative examiner are not entitled to any particular weight. *Peterson*, 552 F. App'x at 539; *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012). As noted above, while the ALJ is required to give "good reasons" for the weight assigned a treating source's opinion, *see Wilson*, 378 F.3d at 545, this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source, *see Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). However, "the ALJ's decision still must say enough to allow the appellate court to trace the path of [her] reasoning." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (internal quotation marks omitted).

Plaintiff provides only a few scant sentences regarding these opinions. It appears he claims the ALJ was required to adopt Dr. King's opinion because she found it consistent with the record (the typographical error argument rejected above) and makes a general argument the ALJ did not discuss the supportability of the opinion, the consistency of the opinion, and the doctor's specialization as required by 20 C.F.R. §§ 404.1527, 416.927 (2013). This argument is meritless. The ALJ explicitly stated she had considered the opinions pursuant to agency regulations. (PageID.829.) Moreover the ALJ's observation that the restrictions offered by both doctors were inconsistent with the record evidence is supported by substantial evidence. On numerous occasions

14

Plaintiff demonstrated intact cognitive functioning, good insight and judgment, and clear speech. (PageID.570, 1162.) These findings are clearly inconsistent with the doctors' notations that Plaintiff would be limited in the ability to perform simple job instructions and deal with others. The ALJ's decision to assign little weight to the opinions is thus supported by substantial evidence.

For all the above reasons, Plaintiff's second claim of error thus fails.

### 3. The ALJ's Failure to Assign Weight to a Third-Party Function Report is, at Most, Harmless Error.

Finally, Plaintiff contends the ALJ erred as a matter of law in failing to assign any specific weight to the opinion of his girlfriend, Tina Groeneveld. In this case, the ALJ summarized Ms. Groeneveld's report, but did so apart from her discussion of the rest of the opinion evidence. Instead, it appears the ALJ treated the function report together with Plaintiff's own report and allegations, which she went on to find were not entirely credible. (PageID.824.) The Court discerns no reversible error.

Opinions expressed by non-treating sources such as a claimant's girlfriend are not entitled to any deference and the ALJ is not required to articulate good reasons for discounting them. *See, e.g., Smith*, 482 F.3d at 876. Instead, the ALJ is simply required to consider the lay opinions and accord them the weight she finds appropriate. *See, e.g., Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x. 392, 397–98 (6th Cir. 2014). "[W]here an ALJ discusses at length the objective medical evidence, he is not required to include a separate review of a third party statement." *Dixon v. Colvin*, 2015 WL 5722794, at *7 (E.D. Ky. Sept. 29, 2005). Additionally, "while it is true that the ALJ must consider all of the evidence, reversible error does not occur unless it appears from the record that the ALJ simply failed to take into account at all some item of evidence which materially bears on the ultimate resolution of the case." *McKay v. Comm'r of Soc. Sec.*, No. 2:14–cv–1061,

2015 WL 6447739, at *6 (S.D. Ohio Oct. 26, 2015). Here, the ALJ indicated that she had considered all the evidence, indicating that she also considered the third-party function reports. (PageID.823–824.)

It is true that the ALJ does not expressly assign a particular weight to Ms. Groeneveld's opinion or expressly reject it. That would have been preferable to satisfy the Sixth Circuit's direction that "[i]f lay witness testimony is provided, the ALJ cannot disregard it without comment, and must give reasons for not crediting the testimony that are germane to each witness," *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 810 (6th Cir. 2012). But, the Court finds any error to be harmless on this record. As Plaintiff admits, the third-party report was largely consistent with his own testimony. (PageID.1254.) Ms. Groeneveld's opinion therefore adds nothing materially new to the record in light of the ALJ's exhaustive review of the objective medical evidence. It was the objective medical record that led the ALJ to discount Plaintiff's reported severity of symptoms, and the third-party report is subject to the same critique. Once the ALJ determined that the objective medical record required a discounting of Plaintiff's own descriptions, the same logic requires discounting Ms. Groeneveld's opinion as well. *See Maloney*, 480 F. App'x at 810 ("if the ALJ erroneously disregards a lay witness's testimony, the error is harmless if 'no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Maloney*, 480 F. App'x at 810 (quoting *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1056 (9th Cir. 2006)). Remand, simply to have the ALJ explicitly say so, would elevate form over substance. Accordingly this claim is rejected.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED.**

A separate judgment shall issue.


Dated: August 14, 2017          /s/ Janet T. Neff
                                JANET T. NEFF
                                UNITED STATES DISTRICT JUDGE